CUTTER ELECTRICAL & MANUF'G CO. v. CLEVERLY et al.

(Circuit Court, E. D. Pennsylvania. December 18, 1894.)

No. 24.

1. PATENTABLE INVENTION—SUBSTITUTION—ELECTRICAL SWITCHES.
   The substitution, in a combination, of one well-known electrical switch for another, without producing any change in function or result, does not involve invention.

2. SAME.
   The Cutter patent, No. 437,667, for improvements in electrical switches, *held* void for want of invention.

This was a suit in equity by the Cutter Electrical & Manufacturing Company against Henry A. Cleverly, Frank Stevens, and Samuel Walsh for alleged infringement of a patent.

Duncan & Page, for complainant.
Ernest Howard Hunter, for defendants.

DALLAS, Circuit Judge. This suit is brought for the alleged infringement of letters patent No. 437,667, issued September 30, 1890, to Henry B. Cutter, as joint inventor with and assignee of Lucius T. Stanley, for "certain new and useful improvements in electrical switches"; and the bill contains the usual prayer for an injunction and an account. The patent contains five claims, but only two of them are involved in this controversy, viz.:

(4) "In an electric switch, the combination with a rocking lever constituting a part of the operative parts of the switch mechanism, of a face plate for inclosing said switch mechanism in a suitable receptacle, and push buttons passing through said face plate and connected with opposite ends of said rocking lever, as set forth."

(5) "A spring-actuated electric switch adapted to be inserted in a recess in a wall, and a pivoted lever for operating the same, in combination with a face plate for covering said recess and inclosing said switch, and push buttons passing through said face plate and connected with the lever of the switch mechanism, whereby the switch may be set in action or operation to make or break circuit by pushing one or the other of the said buttons."

No one of the devices mentioned in either of these claims, separately considered, was new. This is true with respect to the character or form of switch employed, as well as of the other details. The complainant's expert testified:

"I do not understand that the general principles of the switch mechanism shown in the Stanley & Cutter patent were new at the date which the patent bears. This is illustrated by the exhibit, Cleveland 1888 patent, in which a switch operating upon a similar principle is shown and described."

It is, however, insisted that a new organism was created by so combining the old devices as to produce the patented contrivance, with its adaptation to be "fitted in a recess, covered by a face plate flush with the wall, and operated by push buttons, like the ordinary

flush or push-button switches, and yet have the capabilities and functions required of switches used generally in systems of electrical distribution." But careful examination of the evidence as to the prior state of the art has forced upon me the conviction that nothing whatever was done by Cutter and Stanley which entitles them to be ranked as inventors. Mr. Cutter admits in his testimony that the Bosworth patent of 1887 shows a flush push-button device for opening and closing a circuit, and that it was his knowledge of that device which led to the "invention" of the device in suit; but he adds that the earlier one, though used for a number of years to control electric gas-lighting burners, requiring electric currents of very low amperage, would not be applicable for the opening and closing of an electric light circuit, because such a circuit would carry an electrical current sufficiently heavy to destroy it. His design, he says, was to provide a device suitable for controlling electric light currents, and "having the same ornamental features as the Bosworth device." In other words, it was proposed to alter that device only to the extent which might be requisite to adapt it for use in connection with electric light circuits; and to effect this purpose no change in the face plate, push buttons, or inclosing receptacle for insertion in a recess in the wall was necessary or was made. The retention of all these parts was needful to produce the same ornamental features as the Bosworth device, and accordingly they were all retained. The only departure from that device consisted in the character of the switch mechanism which was introduced, and that, as already mentioned, the complainant's expert has conceded to be old, and to be shown by at least the Cleveland patent of 1888, as it certainly is. What is relied upon as evidencing invention amounts to nothing more than the substitution, in an obvious way, and without producing any difference in function or result, of the switch of the Cleveland patent and others, for that shown in the Gisborne patent of 1861. It is unnecessary to refer to any of the several patents which have been produced, in detail. Suffice it to say that investigation of all of them constrains the conclusion that the inventive faculty could not reasonably be said to have been exercised in forming the construction for which protection is now asked. The complainant's expert testified that if the combination desired had been clearly placed before him as a "mechanical problem," he would have experienced no serious difficulty in solving it. He added, it is true, that the idea had not occurred to him or to others, but he defines the word "idea," as used by him, by saying that if he had been told the combination in question "had been thought of and was desired" he would have experienced no difficulty in constructing a mechanical device which would have fulfilled the conditions imposed; that "if an intelligent explanation of the idea had been made, * * * skill alone would have been able to produce the combination described." The testimony of the witness cannot, I think, be read without perceiving that he was unable to claim for Stanley and Cutter any other merit than that of having suggested that by simply substituting one well-known piece

of mechanism for another a beneficial result would be obtained,—
that is to say, that their conception was a good one, but was not
inventive; that their thought was a happy one, but created noth-
ing, because the concrete expression of their idea was already ex-
istent, and derived nothing from them but their perception of its
more extended applicability. The learned counsel of the complain-
ant has frankly said that "the invention  *  *  *  may be summed
up in the statement that it was the result of an intelligent concep-
tion or idea," and that, "this much [the idea of what was wanted]
being once in the minds of the inventors, the rest was very easy";
but, unfortunately for the plaintiff, "the rest" was not only easy,—
it had actually been accomplished.

There is evidence that the patented apparatus supplied a want,
and that it has gone quite extensively into use; and the witness to
whom I have before referred has testified that, although he was
in the business, "the idea" had never occurred to him. This kind
of testimony is of consequence in doubtful cases, but in the present
one the effect of the more direct evidence is conclusive, and there-
fore no weight can be attached to the proof I have adverted to. Bill
dismissed, with costs.