CUTTER ELECTRICAL & MANUFACTURING CO. v. ANCHOR ELECTRIC CO. et al.

(Circuit Court, S. D. New York. September 12, 1899.)

1. PATENTS—INVENTION—ELECTRICAL SWITCHES.
		The Cutter and Stanley patent, No 437,667, for an electrical switch, shows nothing more in the combination therein described in claims 4 and 5, in view of the prior art, than mechanical skill applied to the newly-developed exigencies of the electrical art, and such claims are void. *Held,* also, not infringed, conceding their validity.

2. SAME—SUCCESSIVE SUITS TO ESTABLISH VALIDITY.
		Where one court has thoroughly examined a patented device, and has found the patent invalid on its face, or in view of the prior art, another court should not be asked, in a new and independent suit, to exhaustively examine and discuss the same questions, without some reason shown.

This was a suit in equity by the Cutter Electrical & Manufacturing Company against the Anchor Electric Company, Mildred B. Stanley, and George L. Patterson, for infringement of a patent.

Cravath & Houston, John P. Croasdale, and John W. Houston, for complainant.

Edward P. Payson and Anthony Gref, for defendants.

TOWNSEND, District Judge. Final hearing on bill and answer raising questions of validity and infringement of patent No. 437,667, issued September 30, 1890, to complainant's assignors, Henry B. Cutter and Lucius T. Stanley, for an electrical switch. The patentees of the patent in suit stated in their specifications:

"Our main purpose has been to produce a neat and ornamental switch mechanism, which may be applied and used in any house or room without disfigurement; * * * and our further object has been to improve the construction and mechanical details of the switch mechanism itself."

Thereupon they claimed, in the first three claims of the patent, a contact bar as described, said contact bar in combination with an electric switch, and the special combination of the specific elements as shown in the drawings. It is not contended that these claims are infringed. The fourth and fifth claims cover the general combination of said parts. It is unnecessary to consider the fourth claim, as it is inartificially drawn, as it only differs from the fifth claim in the omission of one of the elements covered thereby, and as it is anticipated by the Giesborn English patent, No. 1,378. The fifth claim is as follows:

"A spring-actuated electric switch adapted to be inserted in a recess in a wall, and a pivoted lever for operating the same, in combination with a face plate for covering said recess and inclosing said switch, and push buttons passing through said face plate, and connected with the lever of the switch mechanism, whereby the switch may be set in action or operation to make or break circuit by pushing one or the other of said buttons."

Complainant's anchor switch comprises a combination of push buttons pivotally attached to a pivoted rocking lever or bar having an extended arm in which there is a slot, through which slot a pin passes, which pin is connected with a centrally-pivoted contact or lever. This pin, and a pin at the upper end of the slotted extended arm, are connected by a spiral spring. The guide holes in the face plate cause the push buttons to move in and out in a straight line. When a button is pushed in, it actuates the lever, which, being moved inwardly, causes said extended arm and contact lever to move in the arc of a circle from one side to the other, so as to make or break contact. When the contact lever passes over the center, the tension of the spring completes the movement, and holds the contact lever in place. Defendants' switch comprises a movable contact member or bar which is pivotally and rigidly connected with a disk provided with detents which are engaged by spring-actuated pawls on either side, and which disk also has a lug projecting from its upper face. A rocking bar, adapted to be actuated by push buttons, as in complainant's patent, is also provided with a lug, and has a spring coiled about its axis, the ends of which bear in the form of an X against said lugs. When one of the buttons is pushed in, said lug on the rocking bar pushes against one of the ends of said spring, and carries said end over to the right or left; and when the arm of the rocking bar, revolving in the arc of a circle, has proceeded far enough, it pushes aside one of the detents which engages the pawl and disk, and thus permits the other end of the X-spring to operate on the lug on said disk, thus throwing said disk to one side, and, with it, the contact bar to make or break contact. This switch is made in accordance with defendants' patent to Marshall. Its push buttons and rocking lever were old in the art. It is not operated by means of an over the center movement, such as is employed by complainant. It is admitted that this device comprises certain advantages not found in complainant's invention. It is clear that this construction does not infringe unless a broad scope is given to the fifth claim of complainant's patent. The complainant itself admits that defendants' switches have not "a rocking lever, N, pivoted to a stud, R, which has an extended arm, P, in which is a slot, O, through which passes the pin, K." Counsel for complainant admits, or it is practically proved, that each of the elements of its combination was old, and that defendants' structure comprises different elements differently combined and differently operated. Complainant's over the center mechanical movement is old, as shown by the Combs and Rhodes patent. The push-button idea, combined with such movement in electrical switches, is illustrated in the drawings and described in the specifications of the Egge British patent of 1887. The identical connection between slot and pin on cam is shown in the Rice and Thompson patent of 1885, and, in order to operate the latter device with a push button, it would only be necessary to affix the handle there shown to complainant's rocking-bar lever. The Cleveland patent of 1888 shows a connection between actuating device and contact bar by a spring extending from the arm, C, to a pin on the contact-making arm, which is the mode of operation shown in complainant's patent.

In these circumstances, even if this collecting together of elements, as claimed in the fifth claim, is not a mere aggregation, it is clear that no invention was involved therein. The limitations upon the invention as stated by the patentees, the language of the claims alleged to be infringed, and the history of the art show that in the device of the complainant there is nothing more than mere mechanical skill applied to the newly-developed exigencies of the electrical art. It may be true that this apparatus is better designed than other contrivances to be inserted in the wall of a room; and that the previous push buttons have been generally used to control electric gas-lighting devices, rather than for making and breaking contact; but it is clear that any skilled mechanic, having before him the patents already referred to, would have been able to adapt them to these new uses as soon as the problem was presented to him by the development of the electrical art. Furthermore, even if the patent were valid, defendants do not infringe. And now that several days have been wasted in the argument of this case and in an exhaustive examination of the various patents, it is only fair to state that no reason for bringing this suit has been shown. The only possible ground for any claim of patentability is that this push-button device relates to the operation of the mysterious agent electricity. But it appears from the case of This Complainant v. Cleverly (C. C.) 65 Fed. 94, that Judge Dallas examined this patent and the prior art in a suit where infringement was alleged of the same claims as are in issue here, and that the learned judge found the patent void for want of invention. The writer has recently felt obliged to condemn this growing evil of thus retrying cases in order to bolster up patents already declared invalid in one circuit by a new suit in another circuit, instead of by settling the question by appeal from the original decision, and those suggestions are pertinent here. This is not a case where newly-discovered evidence has been introduced to invalidate a patent already held to be valid; nor one where, by a previous decision, the bill was dismissed on account of noninfringement; nor is this even a case, so far as appears from the record, where it is sought to validate a patent by newly-discovered evidence. In the 41 pages of complainant's brief no reference is made to Judge Dallas' opinion, and no attempt is made to explain how or why he was mistaken in his statement that "it is unnecessary to refer to any of the several patents which have been produced in detail. Suffice it to say that investigation of all of them constrains the conclusion that the inventive faculty could not reasonably be said to have been exercised in forming the construction for which protection is now asked." There seems to be an increasing tendency on the part of counsel for patentees who have been defeated at final hearing in one circuit to try to secure a rehearing on the same questions in another circuit upon various frivolous excuses. The writer has thus been called upon in four cases during one month to listen to extended explanations of mechanical combinations, and to long arguments on questions of law at final hearing, only to reach the conclusion, after patient independent investigation, that his views in these cases were in accord with those of the court which had already fully examined said questions, and stated its opinion thereon. Where it ap-

pears from its opinion that a court has thoroughly examined a patented device, and has found it invalid on its face, or in view of the prior art, another court should not be asked to exhaustively re-examine and discuss such questions without some reason shown. Let the bill be dismissed.